UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SON ELDER                                                                    CIVIL ACTION

VERSUS                                                                       NO. 04-1365

CARGILL, INC., ET. AL.                                                       SECTION "A"(5)

## ORDER AND REASONS

Before this Court is a **Motion for Summary Judgment (Rec. Doc. 29)**, filed by Defendant, Cargill, Inc.  The motion is opposed by Plaintiff Son Elder.  The motion, set for hearing on April 5, 2006 is before the Court on the briefs without oral argument.  For the following reasons, the motion is GRANTED.

### I. BACKGROUND

Plaintiff began his work with Cargill in 1987 on a part time basis.  (Pla. Opp., p. 1).  In 1991 he left to fulfill military service obligations and returned to work at Cargill later that year on a full-time basis.  (*Id.*).  He resigned in 1988.  (*Id.*).  He then returned in August of 2001 as a longshoreman.  (*Id.*, Def. Memo., p. 1).  He worked aboard the K-2 Terminal, a ship loading rig which was located in the Mississippi River in Convent, Louisiana.  (Pla. Opp., p. 2, Def. Memo, p. 1).  Plaintiff had various job responsibilities, including loading vessels, operating cranes, bulldozers, and bobcats, and acting as a bargeman.  (*Id.*).  On November 17, 2003, Plaintiff's employment with Cargill was terminated.  (Def. Memo., p. 1).  On March 2, 2004, he filed a

Charge of Discrimination with the Equal Employment Opportunity Commission. (*Id.*). On May 18, 2004, he filed this suit, alleging that he was discharged in retaliation for complaining to the human resources office and his supervisor/manager about favoritism in scheduling and disciplinary actions. (Pla. Comp.). On July 15, 2004, Plaintiff amended his Complaint, alleging that he was falsely accused of overloading a hold and taking it upon himself to use equipment that was unauthorized. (Pla. Amended Comp.). He contends that Defendants have lied, conspired against him, and committed a breach of confidentiality. (*Id.*).

## II.   DISCUSSION

### A. The Parties' Contentions

Defendants argue that Plaintiff fails to state a prima facie case of retaliatory discharge under Title VII, and thus his claims should be dismissed on summary judgment. They contend that Plaintiff was not engaged in activity protected by Title VII when making the alleged complaints to human resources, and there is no evidence of any causal link between the alleged complaints and his termination.

Defendants point to Plaintiff's deposition, in which he testified that he complained to Marianne Davis, a Cargill Human Resources representative, in September of 2003, regarding what he perceived to be favoritism in scheduling and in allowing employees to take time off. Defendants argue that these complaints were of a general nature with regard to certain employees on Plaintiff's shift, and were in no way related to any racial discrimination. They point out that Plaintiff admitted that when he talked to Ms. Davis in September and October of 2003, he did not recall telling her that the favoritism was based upon race. (Def. Memo., p. 5,

citing Pla. Depo., Exh. D, p. 59).

Defendants also note that of the five individuals that allegedly received favorable treatment, two are Caucasian and three are African-American (*Id.* at 6, citing Pla. Dep., Exh. D., p. 145-46 and EEOC charge, Exh. B). They contend that this is further evidence that Plaintiff did not engage in a protected activity. They also point to Plaintiff's statement in his EEOC charge that another "black employee was discharged for the same violation and he has never complained about employment discrimination before his discharge," arguing that this statement supports the conclusion that the complaints played no role in Plaintiff's termination. (*Id.*, citing EEOC charge, Exh. B.).

According to Defendants, the foregoing conclusively demonstrates that Plaintiff's complaints did not pertain to discriminatory treatment prohibited under Title VII, and thus he has failed to establish a prima facie case of retaliation.

Defendants further contend that, in addition to a lack of evidence of protected activity, there is also no evidence that the alleged complaints were causally related to Plaintiff's termination. They argue that in his deposition, Plaintiff admitted to numerous warnings and disciplinary actions based upon violations of Cargill's safety, performance and disciplinary policies, rules and procedures, which occurred before his alleged complaints to human resources. (*Id.* at 7-8, citing Pla. Depo., Exh. D., p. 60-66 and Exhs. A, C, D, E, F, and G to depo). These violations include: failure to ensure that cargo was stowed properly resulting in dead freight; reading a newspaper while at work and leaving work to go to the doctor without bringing a doctor's excuse as requested by Cargill; failure to wear shiploader control box harness while

loading vessel; leaving work without inquiring as to further duties; failing to remove spills and piles of product on vessel after shift and overloading hold with product; and overfilling a hold on ship being loaded.  (*Id.* at 8).  Defendants point out that the warnings and suspension notices pertaining to these violations advised Plaintiff that future violations may result in further disciplinary action "up to and including discharge."  (*Id.*).

Defendants contend that in addition to the above incidents, three other incidents occurred during the month of Plaintiff's termination.  On November 7, 2003 he was advised that Cargill would not be using a tractor in any hold on a vessel unless it was absolutely necessary.  (*Id.*)  According to Defendants, Plaintiff overloaded the hold leaving no choice but to use a tractor to complete the hold, causing downtime and unnecessary tractor work.  (*Id.*).  Plaintiff was given a warning.  (*Id.*).  On November 10, 2003, he was issued another warning based on his use of trimming machines while loading a vessel which contained a self-trimming bulk carrier.  Defendants contend that this resulted in the abuse of premium pay for trimming, slowdown of production, misuse of equipment and damage to the trim machine.  (*Id.* at 9).  On November 12, 2003, Plaintiff was again disciplined for not putting on a dead box before starting the loading of a vessel.  (*Id.*).  Defendants contend that this caused excessive dust coming out of the shiphold, which, in turn, caused environmental problems, including problems with residences located on the other side of the levee.  (*Id.*).  Plaintiff was suspended pending further action.  (*Id.*).

Defendants argue that it is Plaintiff's violations of Cargill's safety, performance and discipline policies, rules and procedures over the course of his employment at Cargill that lead to the decision to terminate his employment on November 17, 2003.  They acknowledge that

4

Plaintiff disputes some of the facts surrounding the issuance of the November warnings and disciplinary actions. They argue however, that his challenges are not dispositive of the issue before the Court. They argue that whether or not Plaintiff should have been held responsible for the actions, there is no evidence that the warnings were issued based upon retaliation.

Plaintiff opposes. He alleges that on or about September 30, 2003, he contacted the Human Resources office of Cargill to complain about favoritism and bias being committed by Cargill supervisors/management towards particular employees. (Pla. Opp., p. 2, citing Pla. Aff., Exh. A, and EEOC Questionaire, Exh. B). He also contends that he complained that the K-2 facility was frequently undermanned, requiring workers to perform added duties and posing a safety risk. (*Id.*). According to Plaintiff, this activity was in violation of the agreement Cargill had entered into with the International Longshoreman's Association (ILA). (*Id.*, citing Pla. Aff., Exh. A).[1] Plaintiff contends that Ms. Davis of Human Resources indicated that she would investigate the matter and update him as to her findings and that she would speak with Kevin Pray, the superintendent of the K-2 facility. (*Id.*).

Plaintiff contends that he again contacted Ms. Davis on November 3, 2003 after returning from a vacation. (*Id.* at 3). According to Plaintiff, while on vacation, Keith Roach of Cargill asked if he would consider returning to work but did not indicate that returning was mandatory. (*Id.*). He explained to Ms. Davis what had occurred. (*Id.*). She again said she would investigate. (*Id.*). He was thereafter disciplined on November 7th, 10th, and 12th for the various

---

[1] Plaintiff contends that he assisted in the contract negotiations with Cargill on behalf of the ILA.

violations previously mentioned, which resulted in his suspension. (*Id.*).

Plaintiff contends that he again contacted Ms. Davis on November 13, 2003 to inform her of his suspension and to express his concern that he was in danger of being fired. (*Id.*). She again indicated that she would contact Mr. Pray. (*Id.*). Four days later, Plaintiff was terminated. (*Id.*). Thereafter, he called Ms. Davis, and she stated that she could not help him. (*Id.*). During that conversation, Mr. Elder suggested that he had been retaliated against because of his complaints to her. (*Id.*). According to Plaintiff, similarly situated employees of Cargill were cited for violations similar to those allegedly committed by Plaintiff. (*Id.* at 4). He argues, however, that the discipline used in the various circumstances was grounded in bias and partiality. (*Id.*).

Plaintiff contends that he is able to establish a prima facie case of retaliation under Title VII. (*Id.* at 7). First, he claims that he engaged in a "protected activity" for purposes of his retaliation claim under Title VII. (*Id.*). He argues that the contact he initiated with the Human Resources Office of Cargill constituted such activity. (*Id.*). According to Plaintiff, his charge with the Human Resources Office instigated an investigation of favoritism and bias at Cargill. (*Id.*).

Next, Plaintiff avers that an adverse employment action occurred – termination of his employment. (*Id.* at 8). He further contends that there was a causal link between the protected activity and the adverse employment action that occurred. He argues that he was employed by Cargill for approximately 15 years, and that he, along with virtually every other longshoreman employed at Cargill, have violated Cargill's safety, performance, and disciplinary policies, rules

and procedures, but it was not until he engaged in protected conduct that he was discharged. (*Id.* at 9). He also contends that his alleged infractions are seemingly commonplace among longshoremen. (*Id.*).

Plaintiff argues that the timing of his discharge is suspicious – within the span of five days subsequent to his engaging in protected conduct, he was disciplined on three occasions and then terminated. (*Id.*). He further argues that he was falsely accused of violating Cargill's policies, rules, and procedures. (*Id.* at 10).

Plaintiff argues that Cargill's nondiscriminatory and legitimate reasons for discharging him offered by Defendants are purely pretextual, and thus their motion for summary judgment should be denied. (*Id.*).

Defendants respond, arguing that Plaintiff has still failed to set forth any evidence of a "protected activity" necessary to establish a prima facie case of retaliation. (Def. Reply, p. 1) They emphasize that Plaintiff has testified that he did not make any reference to the fact that he believed any perceived favortism was related to race. (*Id.* at 3). Defendants further argue that Plaintiff has put forth no evidence establishing that his alleged complaints had any causal relationship with the termination of his employment. (*Id.*). They contend that Plaintiff cannot satisfy his burden in opposing the motion for summary judgment with conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. (*Id.* at 3-4). Moreover, Defendants contend that Plaintiff has not produced any evidence contradicting Cargill's evidence that the termination of Plaintiff's employment was based upon violations of Cargill's safety, performance and disciplinary policies, rules and procedures. (*Id.* at 4). Thus,

7

they contend, his claim must be dismissed. (*Id.*).

Defendants also argue that Plaintiff's alleged complaints that the shifts at Cargill were sometimes short-handed do not create an issue of material fact sufficient to preclude summary judgment. (*Id.*). They point out that Plaintiff made no allegation in his EEOC charge of retaliation about working "short-handed." (*Id.*). Further, they contend that he did not mention this in his complaint, deposition, or affidavit. (*Id.* at 5). Thus, they argue, there is no evidence to support Plaintiff's argument that he complained about working short-handed. (*Id.*).

Finally, Defendants contend that the alleged statements of other employees regarding Plaintiff's termination are improper evidence to oppose a motion for summary judgment because they are unsworn and were written by Plaintiff and signed by the other employees at his request. (*Id.* at 6, citing Pla. Depo., Exh. A, p. 94-98).

    *B. Law and Analysis*

        1. <u>Summary Judgment Standards</u>

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially

shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing FED.R.CIV.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

   2. The Applicable Law

The *McDonnell Douglas* test applies to Title VII unlawful retaliation cases. *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 427 (5th Cir. 2000) (citing *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). This test was developed by the Supreme Court for cases in which discrimination can be proven only by circumstantial evidence. *Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001). Under that test, Plaintiff must first establish a *prima facie* case of unlawful retaliation. *Byers*, 88 F.3d at 304. If he does so, Defendant then bears the burden of articulating a legitimate, non-discriminatory reason for the adverse employment action. *Id.* The burden then falls on Plaintiff to establish that Defendant's explanation is a pretext for unlawful retaliation. *Id.*

   To establish a *prima facie* case of unlawful retaliation, Plaintiff must demonstrate that (1) he engaged in a protected activity under Title VII; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse

9

employment action. *Id.* An employee has engaged in activity protected by Title VII if he has (1) "'opposed a practice made an unlawful employment practice by this subchapter,'" or (2) "'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* (quoting 42 U.S.C. § 2000e-3(a)).

Under Title VII, an employer commits an "unlawful employment practice" if he "(1) [fails] or refuses to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national original. . . ." 42 U.S.C. § 2000e-2(a).

To satisfy the "opposition clause," a plaintiff does not need to prove that the defendant's practices were actually unlawful. *Id.* at 428. He only needs to establish that he had "'a reasonabl[e] belief that the employer was engaged in unlawful employment practices." *Id.* (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981). Plaintiff alleges that the protected activity he engaged in was contacting the Human Resources Office of Cargill, which, to his knowledge and belief, instigated an investigation of favoritism and bias at Cargill.

Plaintiff has failed to establish that he engaged in a protected activity under Title VII, and thus he has not established a *prima facie* case of unlawful retaliation. It is undisputed that Plaintiff made complaints to the Human Resources department. This, however, is not in and of itself a protected activity. To constitute a protected activity, Plaintiff had to oppose an

10

employment practice *made unlawful by Title VII*. Plaintiff clearly admits in his deposition that when he talked to Marianne Davis of Human Resources in September and October of 2003, he did not tell her that he thought the favoritism he complained of was based on race. (Def. Memo., Pla. Depo., Exh. D, p.59). In his deposition, counsel for Defendants asked, "When you talked to Marianne Davis in September of '03 and October of '03, did you in any way tell her that you thought the favoritism was based upon race?" (*Id*). In response, Plaintiff stated, "Not really. I don't think I did. I just said certain people are being treated unfairly, and I brought it to her attention for her to check into it. And when I did that all hell broke loose. Like I said, it was just a matter of time before I was out of there. Whether I say it was racial or whether I say it was just being done, favors towards other people."

Furthermore, Plaintiff has not provided any evidence that he expressed any concern of racial discrimination in the complaints he made in November. Nor does Plaintiff establish or even contend that he told Human Resources that he thought employees were being treated differently on the basis of gender, religion, national origin, or any other protected characteristic. Thus, he has not demonstrated that he engaged in a protected activity and has failed to establish a *prima facie* case of unlawful retaliation.

Even if Plaintiff did establish a *prima facie* case, he still could not avoid summary judgment, as Defendants have set forth a legitimate, non-discriminatory reason for the adverse employment action – multiple violations of company policies. The ultimate burden is on Plaintiff to establish unlawful retaliation. Plaintiff admits to having violated Cargill's safety, performance, and disciplinary policies, rules and procedures. (See Pla. Opp., p. 9). Thus, his

11

arguments that Defendants' reason for discharge is a pretext is weak.

**ACCORDINGLY**,

For the foregoing reasons, Defendants' **Motion for Summary Judgment (Rec. Doc. 29)** should be and is hereby **GRANTED**. Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 20th day of June, 2006.

_____
Jay C. Zainey
United States District Judge